1
2
3
4
5
6
7

O

8

## UNITED STATES DISTRICT COURT

9

## CENTRAL DISTRICT OF CALIFORNIA

10

11    TODD ERIC TANNER,                    )   Case No. EDCV 14-01689 RNB
                                          )
12                      Plaintiff,         )
                                          )
13              vs.                        )   ORDER REVERSING DECISION OF
                                          )   COMMISSIONER AND REMANDING
14    CAROLYN W. COLVIN, Acting           )   FOR FURTHER ADMINISTRATIVE
      Commissioner of Social Security,    )   PROCEEDINGS
15                                        )
                        Defendant.         )
16                                        )
                                          )
17    _____     )

18

19        The Court now rules as follows with respect to the two disputed issues listed

20   in the Joint Stipulation.[1]

21   //

22   //

23   //

24

---

25        [1]     The decision in this case is being made on the basis of the pleadings, the

26   administrative record ("AR"), and the Joint Stipulation ("Jt Stip") filed by the parties.

27   In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has

28   determined which party is entitled to judgment under the standards set forth in 42

     U.S.C. § 405(g).

1

**A.**    **Whether the ALJ's granting of little or no weight to the mental function opinions of treating internist Al-Aziz, examining psychologist Campbell, examining psychologist Berg, and non-examining psychiatrist Hurwitz is supported by legally sufficient rationales**

Disputed Issue One is directed to the ALJ's consideration of the opinions of four physicians of record in arriving at his finding at step two of the Commissioner's sequential evaluation process that plaintiff did not suffer from a "severe" mental impairment.

A psychiatric impairment may be found "not severe" at step two of the Commissioner's sequential evaluation process only where the impairment "has no more than a minimal effect" on the claimant's mental ability to perform basic work activities.  If a finding of non-severity is not "clearly established by medical evidence," adjudication must continue through the sequential evaluation process. See Social Security Ruling[2] ("SSR") 85-28; SSR 96-3p; see also Yuckert v. Bowen, 841 F.2d 303, 306-07 (9th Cir. 1988); McDonald v. Secretary of Health & Human Svcs., 795 F.2d 1118, 1124-25 (1st Cir. 1986).

Here, four physicians of record opined that plaintiff's mental impairments had more than a minimal effect on plaintiff's mental ability to perform basic work activities:

1.    Dr. Alaziz, plaintiff's treating internist, issued an opinion in August 2011, stating that plaintiff was "totally disabled because of his severe attention deficit, insomnia, anxiety and depression." (See AR 342.) In September 2011, Dr. Alaziz reiterated his opinion of disability, noting that plaintiff was unable to focus, concentrate, or carry out simple tasks, and was "[u]nable to do any competitive work." (See AR 344-

---

[2]    Social Security Rulings are binding on ALJs. See Terry v. Sullivan, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990).

45.)  Dr. Alaziz opined that plaintiff's prognosis was poor and that disability had lasted more than ten years.  (See AR 291-92.)  In June 2012, Dr. Alaziz issued a physician's certification form listing plaintiff's problems with depression, general anxiety disorder, insomnia, a torn meniscus, and dysthymia, and noting that plaintiff had limitations in standing, walking, lifting, social interaction, and concentration.  (See AR 381.)

2.    Dr. Berg, an examining psychologist hired by plaintiff's attorney, conducted a psychological evaluation on plaintiff in September 2012.  (See AR 397-400.)  In his opinion, Dr. Berg diagnosed plaintiff with major depressive disorder, recurrent, and post traumatic stress disorder, and opined that plaintiff was not able to work a full time job.[3] (See AR 399-400.)

---

[3]    In October 2012, Dr. Berg completed an impairment questionnaire assessing plaintiff as "markedly limited" in the ability to:  understand and remember detailed instructions; maintain attention and concentration for extended periods; work in coordination with or proximity to others without being distracted by them; complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and get along with co-workers or peers without distracting them or exhibiting behavioral extremes. (See AR 405-06.)  Dr. Berg further assessed plaintiff as "moderately limited" in the ability to:  remember locations and work-like procedures; understand, remember or carry out one or two step instructions; carry out detailed instructions, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; sustain ordinary routine without supervision; make simple work related decisions; interact appropriately with the general public; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; respond appropriately to changes in the work setting; be aware of normal hazards and take appropriate precautions; travel to unfamiliar places or use public transportation; set realistic goals or make plans independently.  (See AR 405-07.)

3.      Dr. Campbell, an examining psychologist, issued an opinion based on an evaluation of plaintiff conducted in July 2012. (See AR 346-51.)  Dr. Campbell diagnosed plaintiff with mood disorder, NOS and rule out bipolar disorder. (See AR 349.) Dr. Campbell opined that plaintiff was able to understand, remember, and carry out simple and detailed instructions and make judgments on simple, work-related decisions, but would have "marked" difficulty relating appropriately to the public, supervisors, and co-workers and "moderate" limitations withstanding the stress and changes associated with an eight-hour workday and day-to-day work activities.  (See AR 349-50.)

4.      On July 18, 2012, psychiatrist H. N. Hurwitz, a state agency physician, assessed plaintiff's residual mental function on the basis of his review of the records then contained in his case file.  He found plaintiff "moderately limited" in his abilities to understand, remember, and carry out detailed instructions; to maintain attention and concentration for extended periods; to work with others without being distracted by them; to interact appropriately with the general public; to accept instructions and respond appropriately to criticism from supervisors; and to get along with co-workers without distracting them or exhibiting behavioral extremes. (See AR 363-65.)   In a short addendum, Dr. Hurwitz added that plaintiff "can sustain simple repetitive tasks on a full time basis and can relate adequately with coworkers and supervisors but not with the public." (See AR 365.)

The Court concurs with plaintiff that the ALJ provided reasons for discounting or rejecting all of these opinions that were not legally sufficient.  For example, one of the ALJ's stated reasons for giving little weight to Dr. Alaziz's opinion was that Dr. Alaziz was not a specialist in mental health issues. (See AR 19.) This reason was not a legally sufficient reason for discounting Dr. Alaziz's opinion.  See Lester v.

4

1   Chater, 81 F.3d 821, 833 (9th Cir. 1996) (rejecting argument that treating physician's
2   opinion as to the claimant's mental functioning could be rejected because the treating
3   physician was not a mental health specialist); Sprague v. Bowen, 812 F.2d 1226,
4   1232 (9th Cir. 1987).

5       Similarly, one of the ALJ's stated reasons for giving little weight to Dr. Berg's
6   opinion was that Dr. Berg conducted the examination of plaintiff "through an attorney
7   referral in an effort to generate evidence for the hearing," and "he was presumably
8   paid for the report." (See AR 18.) This was not a legally sufficient reason in itself
9   for discounting Dr. Berg's opinion. See Reddick v. Chater, 157 F.3d 715, 726 (9th
10  Cir. 1998) ("[I]n the absence of other evidence to undermine the credibility of a
11  medical report, the purpose for which the report was obtained does not provide a
12  legitimate basis for rejecting it."); Lester, 81 F.3d at 832; see also Batson v. Comm'r
13  of Soc. Sec. Admin., 359 F.3d 1190, 1196 n.5 (9th Cir. 2004) (rejecting claimant's
14  contention that physician was biased because he was hired by workers' compensation
15  insurance company). Another of the ALJ's stated reasons for giving little weight to
16  Dr. Berg's opinion was that the opinion was inconsistent with the medical record,
17  which revealed inconsistent mental health treatment. (See AR 19.) However, there
18  was evidence in the record (which the ALJ seemingly ignored) that the inconsistent
19  mental health treatment was due to plaintiff's inability to afford the cost of treatment.
20  (See AR 342, 344-45, 458-59.) The Court therefore finds that this stated reason also
21  was not a legally sufficient reason for discounting Dr. Berg's opinion. See
22  Regennitter v. Comm'r of Social Sec. Admin., 166 F.3d 1294, 1299-1300 (9th Cir.
23  1999). Another of the ALJ's stated reasons for discounting Dr. Berg's opinion was
24  that it was contradicted by plaintiff's own testimony about his daily activities.
25  Specifically, the ALJ cited plaintiff's testimony that his daily activities included
26  taking his children to and from school each day, preparing meals, and shopping
27  several times a week. (See AR 19, 63-66, 232-35.) However, like plaintiff, the Court
28  fails to see the inconsistency between those daily activities and the mental limitations

1   to which Dr. Berg opined.

2          The ALJ rejected Dr. Campbell's opinion that plaintiff had marked limitations

3   in social functioning and moderate limitations handling stress and changes in work

4   activities for two stated reasons.  (See AR 19.)   First, the ALJ characterized the

5   foregoing opinion as inconsistent with the results of plaintiff's mental status

6   examination, as plaintiff's psychomotor activity, speech, thought process, cognition,

7   attention and concentration were normal.  (See AR 19, 348.)  However, the results of

8   Dr. Campbell's mental status examination to which the ALJ referred had nothing to

9   do with the marked and moderate limitations to which Dr. Campbell opined.  As

10  reflected in his report, Dr. Campbell observed that plaintiff was anxious, rude, hostile,

11  somewhat physically intimidating, evasive, belligerent and uncooperative.  (See AR

12  347-50.)  Dr. Campbell also reported that plaintiff's affect was angry and somewhat

13  labile and his insight and judgment were "poor."  (See AR 348.)  The marked and

14  moderate limitations to which Dr. Campbell opined were not inconsistent with those

15  observations/findings.  The ALJ's other stated reason for rejecting the marked and

16  moderate limitations to which Dr. Campbell opined was that plaintiff gave poor effort

17  during the examination, refused to discuss his daily routine, and would not comply

18  with psychiatric testing.  (See AR 19.)  The Court notes, however, that plaintiff told

19  Dr. Campbell that he got along poorly with people, and plaintiff's generally hostile

20  and belligerent behavior is well documented.  (See AR 348-50.)  Dr. Campbell stated

21  that she did not know whether plaintiff's behavior had been volitional, implying that

22  it could have been medically dictated behavior.  (See AR 350.)   Although Dr.

23  Campbell acknowledged that only limited information was available, Dr. Campbell

24  did render her opinion regarding plaintiff's marked and moderate limitations based

25  on her findings and plaintiff's presentation at the examination.  (See AR 349-50.)

26  The Court therefore finds that plaintiff's supposed lack of cooperation also was not

27  a legally sufficient reason for rejecting Dr. Campbell's opinion regarding plaintiff's

28  marked and moderate limitations.

1    The ALJ stated that he was according little weight to the opinion of the state

2    agency physician, Dr. Hurwitz, because the medical record did not support the

3    assessed limitations and the record contained minimal mental health treatment.  (See

4    AR 19.)  However, those reasons do not withstand scrutiny because (a) Dr. Hurwitz's

5    opinion was supported by the opinions of plaintiff's treating physician and the two

6    examining physicians, and (b) the record reflects that plaintiff was receiving regular

7    mental health treatment from his treating physician, in the form of prescribed

8    medications.  (See AR 290-91, 342, 344, 345, 379-80, 416.)  Moreover, the lack of

9    evidence of psychiatric hospitalization or comparably serious treatment is not

10   dispositive because step two is only "a de minimis screening device to dispose of

11   groundless claims."  See also French v. Astrue, 2010 WL 2803965, at *6 (C.D. Cal.

12   July 15, 2010) ("A claimant may suffer from a mental impairment without having

13   been hospitalized for that limitation.  Thus, it appears that the ALJ applied more than

14   a de minimis test and his conclusion at step two that Plaintiff does not suffer from a

15   severe mental impairment was error."); Alsyouf v. Astrue, 2010 WL 5624668, at *3

16   (C.D. Cal. Jan. 21, 2010) (same).  Further, as discussed above, there was evidence in

17   the record (which the ALJ seemingly ignored) that plaintiff's failure to obtain

18   additional mental health treatment was due to plaintiff's inability to afford the cost

19   of such treatment.

20       The Court therefore finds that the medical evidence here did not "clearly

21   establish" a finding of non-severity.  See Webb v. Barnhart, 433 F.3d 683, 688 (9th

22   Cir. 2005) (ALJ's determination that claimant exaggerated severity of his symptoms

23   did not "doom" the claim at step two where treating doctors did not dismiss

24   claimant's complaints as altogether unfounded and where there was objective medical

25   evidence of severe impairment); Edlund v. Massanari, 253 F.3d 1152, 1159 (9th Cir.

26   2001) (ALJ's non-severity finding was not supported by substantial evidence where

27   examining psychologist rendered uncontroverted opinion that claimant had severe

28   depression); Holzberg v. Astrue, 679 F. Supp. 2d 1249, 1261 (W.D. Wash. 2010)

1   (ALJ erred in finding depression not severe where evidence indicated moderate
2   limitations in several mental functional areas).

3

4       **B.    Whether the ALJ made a proper adverse credibility determination**

5       Disputed Issue Two is directed to the ALJ's adverse credibility determination
6   with respect to plaintiff's subjective symptom testimony. (See Jt Stip at 28-36.)

7       An ALJ's assessment of pain severity and claimant credibility is entitled to
8   "great weight." Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v.
9   Heckler, 779 F.2d 528, 531 (9th Cir. 1986). Under the "Cotton test," where the
10  claimant has produced objective medical evidence of an impairment which could
11  reasonably be expected to produce some degree of pain and/or other symptoms, and
12  the record is devoid of any affirmative evidence of malingering, the ALJ may reject
13  the claimant's testimony regarding the severity of the claimant's pain and/or other
14  symptoms only if the ALJ makes specific findings stating clear and convincing
15  reasons for doing so. See Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986); see
16  also Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Dodrill v. Shalala, 12
17  F.3d 915, 918 (9th Cir. 1993); Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991)
18  (en banc).

19      Plaintiff testified at the hearing that he resigned from his position as a special
20  education teacher in October 2007, after he was injured in a school riot and had his
21  life threatened. (See AR 55-57.) Plaintiff claimed that he cannot work because he
22  cannot handle being around people. (See AR 56-57.) Plaintiff reported that he has
23  problems with concentration, memory, and completing tasks. (See AR 61, 237.)
24  Plaintiff also claimed that he suffers from knee and tail bone injuries. (AR 58.)
25  Plaintiff stated that in August 2012, he fractured his tail bone when his knee
26  impairment caused him to fall down a flight a stairs. (See AR 58, 62.) Plaintiff
27  testified that he needs to use a cane, is limited to walking 50 yards, and lies down
28  most of the day. (See AR 58, 62-63.) According to plaintiff, his physician

1  recommended knee surgery, but indicated that plaintiff would first need to lose about

2  60 pounds.  (See AR 58.)  Plaintiff testified that he has custody of his two children,

3  ages six and eleven, and takes them to and from school each day.  (See AR 64-65.)

4       The ALJ found that although plaintiff's medically determinable impairments

5  could reasonably be expected to cause the alleged symptoms, plaintiff's statements

6  concerning the intensity, persistence, and limiting effects of these symptoms were not

7  credible to the extent they were inconsistent with the ALJ's residual functional

8  capacity assessment.[4]   (See AR 22.)   In support of this adverse credibility

9  determination, the ALJ proffered three reasons.  (See AR 21-22.)

10      First, the ALJ cited plaintiff's daily activities, which included preparing simple

11  meals, performing grooming activities, shopping, and driving.  (AR 22.)  An ALJ may

12  rely on a claimant's daily activities to support an adverse credibility determination

13  when those activities:  (1) "contradict [the claimant's] other testimony"; or (2) "meet

14  the threshold for transferable work skills."  Orn v. Astrue, 495 F.3d 625, 639 (9th Cir.

15  2007).  However, "[t]he ALJ must make 'specific findings relating to [the daily]

16  activities' and their transferability to conclude that a claimant's daily activities

17  warrant an adverse credibility determination."  Id. (quoting Burch v. Barnhart, 400

18  F.3d 676, 681 (9th Cir. 2005)).  Here, the ALJ found that some of the physical and

19  mental abilities and social interactions required in order to perform  plaintiff's daily

20  _____

21      [4]   Specifically, the ALJ determined that plaintiff is capable of the

22  following: lifting, carrying, pushing and pulling 20 pounds occasionally and 10
   pounds frequently and pushing, pulling, or operating foot controls with the right

23  lower extremity frequently; standing and/or walking 6 hours in an 8-hour workday,

24  but may use a cane for ambulation for 6 hours out of an 8-hour workday for all terrain
   and prolonged ambulation; sitting 8 hours in an 8-hour workday without the need to

25  alternate between sitting and standing to relieve discomfort or pain; climbing ramps

26  and stairs occasionally; kneeling, stooping, crouching, and crawling occasionally; and
   engaging in reaching overhead, gross and fine manipulation, and feeling.  (See AR

27  20.)  The ALJ further found that plaintiff is precluded from climbing ladders, ropes

28  or scaffolds, and balancing.  (See AR 20.)

1   activities were the same as those necessary for obtaining and maintaining

2   employment. (See AR 22.) However, the ALJ made no specific findings about the

3   transferability of plaintiff's daily activities to the work setting, and the record does

4   not evidence that plaintiff spent a substantial part of his day engaged in activities that

5   resembled those necessary for employment. (See AR 22); see Fair v. Bowen, 885

6   F.2d 597, 603 (9th Cir. 1989) (holding that daily activities may be grounds for an

7   adverse credibility finding "if a claimant is able to spend a substantial part of his day

8   engaged in pursuits involving the performance of physical functions that are

9   transferable to a work setting."). The ALJ further found that plaintiff's daily

10  activities were inconsistent with the presence of an incapacitating or debilitating

11  condition, and his ability to participate in such activities undermined his credibility.

12  (See AR 22.) However, the ALJ did not elaborate on which specific activities

13  conflicted with which part of plaintiff's testimony. See Burrell v. Colvin, 775 F.3d

14  1133, 1138 (9th Cir. 2014). Merely referencing plaintiff's cooking, grooming,

15  shopping, and driving activities was insufficient to establish a conflict with plaintiff's

16  testimony. See Orn, 495 F.3d at 639; Lester, 81 F.3d at 834 ("General findings are

17  insufficient; rather, the ALJ must identify what testimony is not credible and what

18  evidence undermines the claimant's complaints."). Accordingly, the Court finds that

19  the ALJ improperly relied on plaintiff's daily activities in support of his adverse

20  credibility determination.[5]

21  //

22

23          [5]      Although the Commissioner cites other alleged inconsistencies between
24  plaintiff's hearing testimony and his reported activities, e.g., plaintiff had custody of
    his two children and attended school to earn a master's degree (see Jt Stip at 33), the
25  ALJ did not identify those inconsistencies as evidence of a conflict between
26  plaintiff's daily activities and his reported limitations. Accordingly, the Court does
    not consider the other cited activities. See Burrell, 775 F.3d at 1138 ("'We are
27  constrained to review the reasons the ALJ asserts.'" (quoting Connett v. Barnhart,
28  340 F.3d 871, 874 (9th Cir. 2003))).

10

Second, the ALJ found that although plaintiff claimed that he spends the majority of his time lying down due to knee and tail bone pain, plaintiff's medical records revealed only infrequent and conservative treatment. (See AR 22.) The record supports this finding. While plaintiff has a torn meniscus in his left knee, Dr. Alaziz's records do not reflect treatment for that condition. (See AR 290-91, 342, 344-45, 379-81, 416-17, 419.) Although plaintiff claimed that knee surgery had been recommended, plaintiff was admittedly not a candidate for surgery, as he had failed to comply with his doctor's directive to lose approximately 60 pounds. (See AR 22, 37, 58, 419.) As for plaintiff's tail bone complaints, the record shows that plaintiff incurred a fractured coccyx in August 2012. (See AR 392-93.) That condition was treated with prescription pain medication. (See id.) There is no indication in the record that plaintiff received any other treatment for his tail bone pain. (See AR 392-93, 419-22). Accordingly, the Court finds that the ALJ properly relied on the infrequent and conservative nature of plaintiff's treatment in support of his adverse credibility determination. See Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (ALJ may draw adverse inference against claimant's credibility from evidence of conservative treatment); Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) (same); Warre v. Commissioner of Social Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.").

Third, the ALJ found that plaintiff offered inconsistent statements about the custody of his two children. (See AR 22.) Specifically, the ALJ noted that at the hearing in October 2012, plaintiff testified that his two children had lived with him for the past four years and that he had full custody of them. (See AR 22, 64.) However, just a month earlier, plaintiff told Dr. Berg that his two children lived with their grandparents. (See AR 22, 398.) The Court finds that the inconsistency in plaintiff's statements was a legally sufficient reason on which the ALJ also could properly rely in support of the adverse credibility determination. Tonapetyan v.

11

1   Halter, 242 F.3d 1144, 1148 (9th Cir. 2001) (ALJ may use "ordinary techniques of
2   credibility evaluation," such as considering the claimant's reputation for truthfulness
3   and any inconsistent statements in her testimony); Smolen, 80 F.3d at 1284 (ALJ may
4   consider "prior inconsistent statements concerning the symptoms, and other testimony
5   by the claimant that appears less than candid"); Johnson v. Shalala, 60 F.3d 1428,
6   1432 (9th Cir. 1995) (ALJ may properly rely on inconsistencies in the claimant's
7   testimony); Bunnell, 947 F.2d at 346 ("[T]he adjudicator may discredit the claimant's
8   allegations based on inconsistencies in the testimony or on relevant character
9   evidence.").

10          In conclusion, the Court finds that even if the ALJ erred in relying on one of
11  the three stated reasons in support of his adverse credibility determination, the error
12  was harmless because the ALJ's other stated reasons and ultimate credibility
13  determination were supported by substantial evidence.  See Carmickle v. Comm'r,
14  Social Sec. Admin., 533 F.3d 1155, 1162-63 (9th Cir. 2008) (holding that ALJ's
15  reliance on two invalid reasons in support of adverse credibility determination was
16  harmless where remaining reasons were adequately supported by substantial
17  evidence).

18

19                          **CONCLUSION AND ORDER**

20          The law is well established that the decision whether to remand for further
21  proceedings or simply to award benefits is within the discretion of the Court.  See,
22  e.g., Salvador v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990); McAllister, 888 F.2d at
23  603; Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981).  Remand is warranted
24  where additional administrative proceedings could remedy defects in the decision.
25  See, e.g., Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984); Lewin, 654 F.2d at
26  635.  Remand for the payment of benefits is appropriate where no useful purpose
27  would be served by further administrative proceedings, Kornock v. Harris, 648 F.2d
28  525, 527 (9th Cir. 1980); where the record has been fully developed, Hoffman v.

1   Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); or where remand would unnecessarily

2   delay the receipt of benefits, Bilby v. Schweiker, 762 F.2d 716, 719 (9th Cir. 1985).

3        This is not an instance where no useful purpose would be served by further

4   administrative proceedings, or where the record has been fully developed.  The Court

5   has found that, with respect to plaintiff's mental impairment, the ALJ erred at step

6   two of the Commissioner's sequential evaluation process.  Remand therefore is

7   appropriate to allow the Commissioner to continue the sequential evaluation process

8   starting at step three.[6]

9        Accordingly, pursuant to sentence four of 42 U.S.C. § 405(g), IT IS HEREBY

10  ORDERED that Judgment be entered reversing the decision of the Commissioner of

11  Social Security and remanding this matter for further administrative proceedings.

12

13  DATED:  April 30, 2015

14

15                                    _____

16                                    ROBERT N. BLOCK
                                      UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25

26  _____

27       [6]     There is no reason for the Court to direct the manner in which the

28  Commissioner performs steps three, four and five (if reached), and the Court declines
    to do so.  Moreover, it is not the Court's intent to limit the scope of the remand.

13